# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

IN RE:

NANCI ELLEN LEVAKE,                           CASE NO.: 20-10227-KKS
                                              CHAPTER: 13

     Debtor.

_____/

## ORDER DENYING *CHAPTER 13 TRUSTEE'S AMENDED MOTION TO DISMISS* (ECF No. 120)

THIS CASE is before the Court on the *Chapter 13 Trustee's Amended Motion to Dismiss* ("Amended Motion," ECF No. 120) and brief in support,[1] Debtor's reply brief in opposition to the Amended Motion,[2] and both parties' additional memoranda and statements in support of and opposition to the Amended Motion,[3] filed as required by the Court's order requiring additional briefing and statements of fact.[4]

---

[1] *Chapter 13 Trustee's Brief in Support of Chapter 13 Trustee's Amended Motion to Dismiss (ECF No. 120)*, ECF No. 122.

[2] *Debtor's Reply Brief (Response to Chapter 13 Trustee's Brief in Support of Chapter 13 Trustee's Amended Motion to Dismiss (ECF No. 122)*, ECF No. 123.

[3] *Chapter 13 Trustee's Memorandum in Response to Order Requiring Additional Briefing and Joint Statement of Undisputed Facts Regarding Chapter 13 Trustee's Amended Motion to Dismiss (ECF No. 120) (ECF No. 129)*, ECF No. 133 ("Trustee's Memorandum"); *Chapter 13 Trustee's Statement of Disputed Facts*, ECF No. 134; *Debtor's Brief in Compliance with Order Requiring Additional Briefing (ECF No. 129)*, ECF No. 135; *Joint Statement of Undisputed Facts Regarding Chapter 13 Trustee's Amended Motion to Dismiss*, ECF No. 136; *Debtor's Statement of Disputed Facts Regarding Chapter 13 Trustee's Amended Motion to Dismiss*, ECF No. 137.

[4] *Order Requiring Additional Briefing and Joint Statement of Undisputed Facts Regarding Chapter 13 Trustee's Amended Motion to Dismiss*, ECF No. 129 ("Briefing Order").

The Court has carefully reviewed the Amended Motion, the parties' memoranda, statements of undisputed fact, and responses, as well as the docket in this case and applicable case law. The Court also heard argument of counsel at a preliminary hearing on June 1, 2026. The Court has determined that no additional evidence is necessary in order to rule on the Amended Motion.

### The undisputed relevant facts.

Debtor worked as a radiographer at Shands Hospital in Gainesville, Florida. Debtor filed the Chapter 13 petition commencing this case on November 9, 2020.[5] Debtor has been paid on an hourly basis throughout this case; her pay varied depending on overtime and what shifts she worked. Debtor reported her interest in retirement accounts when she filed the case.[6] Debtor reported monthly contributions to her retirement accounts in her calculation of disposable income, original Schedule I, and Amended Schedule I.[7] Debtor served the Chapter 13 Trustee ("Trustee") and others with an income deduction order that states, in pertinent

---

[5] In the interest of judicial economy, the Court refrains from citing to the petition and other documents and pleadings about which there is no dispute.

[6] *Schedule A/B: Property*, ECF No. 1, p. 14 (listing two (2) retirement accounts and two (2) pension plans).

[7] *Chapter 13 Calculation of Your Disposable Income*, ECF No. 2, p. 7 (stating monthly total of qualified retirement deductions as $793.38); *Schedule I: Your Income*, ECF No. 1, pp. 37–38 ("Schedule I"); *Schedule I: Your Income*, ECF No. 63, pp. 5–6 ("Amended Schedule I").

2

part: *"nothing herein shall prohibit the employer from contributing to the employee's 401(k) or other retirement accounts . . . ."*[8]

Debtor's first amended plan was confirmed on April 2, 2021. On July 28, 2023, the Trustee moved to dismiss this case, in part due to information provided by Debtor that showed Debtor had additional income. In response, on August 29, 2023, Debtor filed a motion to modify her confirmed plan to increase her plan payments.[9] On August 31, 2023, the Trustee consented to Debtor's motion to modify her plan and withdrew her amended motion to dismiss the case. The Court granted Debtor's motion to modify her confirmed plan and approved the modified plan by order dated September 5, 2023.[10]

The Amended Motion at issue was preceded by a motion to dismiss the Trustee filed in February of 2026, alleging that Debtor had deferred additional income that was not reflected on her tax returns for 2020–2024. Debtor filed an objection to that motion.[11] The Trustee filed the Amended

---

[8] *Order Upon Employer Directing Deductions from Pay*, ECF No. 11 (emphasis added); *see also Certificate of Service of Order Upon Employer Directing Deductions from Pay (Doc 11)*, ECF No. 12. The *Amended Order Upon Employer Directing Deductions from Pay*, ECF No. 73, entered on September 12, 2023, contains the exact same language.

[9] On August 28, 2023, Debtor also filed her Amended Schedule I, an amended schedule of expenses, and a 2022 annual statement of her income.

[10] On September 12, 2023, the Court entered, and Debtor served an amended income deduction order which increased the deductions from Debtor's pay commensurate with the higher payments in the amended plan. *Amended Order Upon Employer Directing Deductions from Pay*, ECF No. 73; *see also Certificate of Service*, ECF No. 74.

[11] As "cause" for dismissal, the original motion to dismiss alleged that Debtor had not submitted all disposable income over the term of the plan. *Chapter 13 Trustee's Motion to Dismiss*, ECF

3

Motion on May 1, 2026, well after Debtor had completed her sixty (60) month plan. The Amended Motion alleges "cause" for dismissal, comprised *inter alia* of Debtor's alleged under-reporting of gross income and her and her employer's contributions to her retirement plan during the case.

### The arguments.

The Trustee urges the Court to dismiss this case for "cause" under 11 U.S.C. § 1307 because Debtor failed to disclose her "accurate" gross income and retirement contributions during the case and thus failed to contribute all CMI ("current monthly income") to the plan. Debtor insists that the Court should deny the Amended Motion because during the case she amended her plan to account for more income, provided copies of her income tax returns to the Trustee, and paid what she is legally obligated to pay under the Bankruptcy Code. In short, the Trustee maintains that the Debtor has not acted in good faith during the case, and Debtor contends the exact opposite.

---

No. 110, p. 2. In the objection, Debtor correctly alleged that: 1) Debtor provided copies of her filed income tax returns to the Trustee during the plan term, which disclosed Debtor's taxable income; and 2) contributions to tax sheltered annuity plans, such as Debtor's 403(b) retirement plan, are not disposable income in Chapter 13, pursuant to 11 U.S.C. § 1325(b)(2). *Debtor's Response – Objection to Chapter 13 trustee's Motion to Dismiss (ECF No. 110)*, ECF No. 111, pp. 1–2, ¶¶ 2–4. In her objection, Debtor recites that she provided copies of her W-2 forms to the Trustee in response to the Trustee's request in October of 2025, which was the 59th month of the 60-month plan. *Id.* at p. 1, ¶ 2.

4

## ANALYSIS

### The time period relevant to the Amended Motion.

Events and facts that occurred before August 31, 2023, when the parties resolved the Trustee's 2023 motion to dismiss by Debtor modifying her confirmed plan to raise her monthly payments, are no longer relevant. Under § 1327 of the Bankruptcy Code the provisions of a confirmed plan bind the debtor and all creditors.[12] Confirmation of a Chapter 13 plan "has preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'"[13] As the First Circuit has explained, "confirmation of a Chapter 13 plan customarily is res judicata as to all issues that were or *could have been decided* during the confirmation process."[14]

A clear illustration of this preclusive bar arose in *In re Santiago*, where the First Circuit B.A.P. reversed a bankruptcy court for ignoring the

---

[12] 11 U.S.C. § 1327(a).

[13] *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015) (quoting 8 Collier on Bankruptcy ¶1327.02[1][c], at 1327–6 (16th ed. 2014), and citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010)); *see also In re Shuman*, Case No. 3:24-bk-793, 2026 WL 467487, at *2–5 (Bankr. M.D. Fla. Feb. 18, 2026) (precluding consideration of a creditor's response to a debtor's objection to claim because the response attempted to attack issues that were "clearly precluded by the binding effect" of the confirmed and modified Chapter 13 plan).

[14] *Carvalho v. Federal Nat'l Mortg. Ass'n (In re Carvalho)*, 335 F.3d 45, 49 (1st Cir. 2003) (emphasis added) (citing *Universal Am. Mtge. Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003); 5 Collier on Bankruptcy ¶ 1327.01, at 1327–2 (15th ed. 2002)); *see also Fla. Dep't of Revenue v. Gonzalez (In re Gonzalez)*, 832 F.3d 1251, 1258 (11th Cir. 2016), *cert. denied*, 582 U.S. 930 (2017); *In re Rose*, 645 B.R. 253, 261 (Bankr. M.D. Fla. 2022).

finality of its own confirmation order.[15] In *Santiago*, the debtor claimed a tax refund as exempt and the Chapter 13 trustee objected.[16] In the objection to exemption the trustee argued that the refund was disposable income that must be paid into the plan under § 1325(b).[17] The trustee did not file an objection to confirmation of the debtors' plan; the bankruptcy court confirmed the plan before it ruled on the objection to exemption of the tax refund.[18] The bankruptcy court then sustained the Chapter 13 trustee's objection to the exemption of the tax refund on the basis that it was disposable income that must be devoted to the plan.[19] The debtors appealed. The B.A.P. for the First Circuit reversed, holding that "any arguments related to § 1325(b) [disposable income] were moot" by the time the bankruptcy court ruled on the exemption because the debtors' plan had been confirmed without objection.[20]

Although *Santiago* is not binding in this district, its logic is persuasive. Such logic dictates that the Trustee in the instant case is foreclosed from arguing about whether Debtor disclosed or failed to submit

---

[15] *Sanchez Santiago v. Oliveras Rivera (In re Sanchez Santiago)*, 478 B.R. 516 (B.A.P. 1st Cir. 2012).
[16] *Id.* at 518.
[17] *Id.* at 522.
[18] *Id.* at 523.
[19] *Id.* at 519.
[20] *Id.* at 523.

income to the plan prior to September 5, 2023, when this Court confirmed Debtor's unopposed modified plan with the Trustee's consent. Other courts have held the same.[21]

### The timing of the Amended Motion and hearing.

Debtor alleges, and the Trustee does not dispute, that the final (60th) payment under Debtor's confirmed plan was due in November of 2025.[22] The Trustee filed the motion to dismiss that preceded the Amended Motion on February 9, 2026, more than two (2) months after the end of Debtor's plan term. The Trustee filed the Amended Motion on May 1, 2026, more than five (5) months after the end of the plan term. The Court conducted the initial hearing on the Amended Motion even later: on May 28, 2026.

At least one bankruptcy court has held that even where the debtors had been acting in bad faith during their case, the fact that the debtors had completed their plan payments before the hearing on the trustee's

---

[21] *See, e.g., In re Melcher*, Case No. 16-21536, 2022 WL 3969586 (Bankr. E.D. Ky. Aug. 30, 2022) (applying the doctrine of laches to bar consideration of the trustee's interpretation of gross income); *see also Davis v. Holman (In re Holman)*, 594 B.R. 769 (D. Kan. 2018) (affirming bankruptcy court's determination that to allow the trustee to reopen bad faith issues that occurred prior to an agreed order would be tantamount to revoking the agreed order confirming the amended plan).

[22] Neither party has mentioned whether Debtor made her final plan payment. For that reason, and because Debor's plan payments were being made via an income deduction order, the Court assumes that Debtor did make that payment when it was due.

7

motion to dismiss prevented the court from dismissing the case.[23] In that case, *In re Holman,* the debtors filed, and the court granted three motions to modify their plan. In each such motion the debtors represented that the wife was unemployed. In the third year of their case debtors filed their fourth motion to modify their plan, requesting to reduce their plan payments due to a reduction in income.[24] In support of that motion the debtors revealed that the wife had been employed in "direct sales" for the prior six (6) years and was receiving over $4,500 per month in commissions.[25] The trustee objected to that motion to modify on the basis that it was not filed in good faith.[26] The issue went to trial but the parties resolved the trustee's objections before the bankruptcy court issued a ruling. In an agreed order, the trustee's objection to debtors' plan modifications was resolved in exchange for a modification that required debtors to pay more for the last twelve (12) months of the plan.[27]

The debtors in *Holman* defaulted, after which the trustee and IRS

---

[23] *In re Holman*, 594 B.R. 769 (affirming bankruptcy court's holding that under 11 U.S.C. § 1328(a), once the debtors complete all payments under the Chapter 13 plan, "the Court 'shall' grant the debtor a discharge.").

[24] *Id.* at 772.

[25] *Id.*

[26] *Id.*

[27] The debtors agreed to pay $3,522 a month for three (3) months and $4,725 a month for the remaining nine (9) months of the plan. *Id.* at 771.

filed motions to dismiss. At trial, the facts showed that the debtors had acted in bad faith throughout their case.[28] Even under those facts, the district court affirmed the bankruptcy court's ruling that it was too late to dismiss the case because issuance of a discharge became mandatory when the debtors completed their plan payments.[29] The district court ultimately concluded that the bankruptcy court "is required to grant the debtor a discharge after completion of all payments under the plan."[30] The district court in *Holman* acknowledged and discussed at length the split among courts as to the meaning of the word "shall" in § 1328(a),[31] versus discretionary dismissal (the word "may") under § 1307(c).[32] Courts have continued to differ on this issue since *Holman*.[33]

---

[28] The debtors in *Holman* filed their tax returns late and failed to provide copies to the Chapter 13 Trustee, even upon request. *In re Holman*, 594 B.R. at 774. The debtors incurred $75,000 in post-petition income tax debt, incurred other debt that the bankruptcy court stated seemed to have been actively concealed, purchased two cars they titled in the wife's parents' names, and the wife incorporated her business and signed a residential apartment lease in another city. *Id.* at 772.

[29] *Id.* at 778

[30] *Id.* at 777.

[31] 11 U.S.C. § 1328(a) ("[A]s soon as practicable after completion by the debtor of all payments under the plan . . . the court *shall* grant the debtor a discharge . . . .").

[32] *In re Holman*, 594 B.R. at 774–77.

[33] *See In re Frank*, 638 B.R. 463 (Bankr. D. Colo. 2022) (finding § 1328 mandates entry of a discharge upon completion of all payments despite debtor's bad faith failure to disclose an asset); *cf. In re Reppert*, 643 B.R. 828 (Bankr. W.D. Pa. 2022) (dismissing a debtor's Chapter 13 case with prejudice after completion of all plan payments because the debtor took title to an unencumbered luxury car and failed to disclose that asset).

## Dismissal will not benefit the creditors.

Dismissing this case by granting the Amended Motion cannot benefit Debtor's creditors. BAPCPA, enacted by Congress in 2005, amended the Bankruptcy Code to exclude from property of the estate "any amount—(A) withheld by an employer from wages of employees for payment as contributions" to an ERISA qualified benefit or deferred compensation plan.[34] In other words, as Debtor argues, retirement contributions are not disposable income in Chapter 13 as long as they are below the federally approved thresholds, which Debtor's were.[35] Debtor has no legal duty to attempt to further amend her plan to include money she contributed to her retirement, nor can Debtor's creditors obtain Debtor's retirement funds if the case is dismissed.

## Debtor's behavior since August of 2023 does not amount to bad faith.

Without question, the taxable income on Debtor's tax returns was not the same as the "Social Security wages" or "Medicare wages" reported on Debtor's W-2s. The Trustee correctly points out that two retirement

---

[34] 11 U.S.C. § 541(b)(7)(A); *see also RESFL Five, LLC v. Ulysse*, Case No. 16-cv-62900-BLOOM/Valle, 2017 WL 4348897 (S.D. Fla. Sep 29, 2017) (concluding that voluntary contributions to a tax-deferred annuity do not constitute disposable income under § 1325(b)(2)).

[35] *See Debtor's Brief in Compliance with Order Requiring Additional Briefing (ECF No. 129)*, ECF No. 135, pp. 11–12.

contributions were being deposited for Debtor monthly, but only one was reflected on Debtor's schedule of current income. These discrepancies do not alone demonstrate bad faith. Debtor provided copies of her income tax returns to the Trustee throughout the case, which is what is required under the Code and by this Court.[36] Debtor also timely complied with the Code's requirement to file prepetition pay advices, which further evidenced her and her employer's contributions to her retirement plan.[37] Debtor provided the Trustee copies of her W-2s upon the Trustee's request, even though that request came during the 59th month of the 60-month plan.

In support of the Amended Motion, the Trustee cites *In re Anderson* for the proposition a trustee has no duty to "go behind a debtor" to ensure accuracy between the income reported on a debtor's schedules and that reported to the IRS on tax returns.[38] *In re Anderson* is distinguishable. In that case, the debtor materially understated his income by completely

---

[36] 11 U.S.C. § 521(f); *Order Establishing Duties of the Debtor and Chapter 13 Trustee, Adequate Protection of Secured Claims, Allowance of Administrative Expenses, and Confirmation Procedures*, ECF No. 15, p. 3, ¶ 10.

[37] Payment Advice from Shands Teaching Hosp & Clinics, to Nanci E LeVake (Sept. 11, 2020) (ECF No. 5, p. 1); Payment Advice from Shands Teaching Hosp & Clinics, to Nanci E LeVake (Sept. 25, 2020) (ECF No. 5, p. 2); Payment Advice from Shands Teaching Hosp & Clinics, to Nanci E LeVake (Oct. 9, 2020) (ECF No. 5, p. 3); Payment Advice from Shands Teaching Hosp & Clinics, to Nanci E LeVake (Oct. 23, 2020) (ECF No. 5, p. 4); Payment Advice from Shands Teaching Hosp & Clinics, to Nanci E LeVake (Nov. 6, 2020) (ECF No. 5, p. 5).

[38] *In re Anderson*, Case No. 06-40856-JJR-13, 2009 WL 1065142 (Bank. N.D. Ala. Apr. 15, 2009).

11

failing to disclose recurring commissions and periodic distributions from his family's business.[39] The *Anderson* court noted that after the debtor amended his schedules to reveal this additional income, the creditors or trustee would "undoubtedly" move to modify the debtor's plan to increase the payments to creditors.[40] The opposite is true here. Even if Debtor had listed all of her retirement benefits on her schedule of current income, it would not have provided a platform to modify her plan to increase her plan payments under § 1329(a).[41]

The Trustee also cites *In re Williams,* another case that is distinguishable.[42] The debtor in *Williams* entirely failed to disclose, or attempted to conceal, significant assets that the Chapter 7 trustee discovered during the § 341 meeting and by performing additional research.[43] The result was that after the debtor in *Williams* properly disclosed her assets, the value of the assets increased "from $36,175.00 to

---

[39] *In re Anderson*, 2009 WL 1065142, at *1.

[40] *Id.* at *2. Rather than dismiss the debtor's case, the court in *Anderson* required the debtor to file amended schedules or face conversion to Chapter 7 or dismissal. *Id.* at *3.

[41] 11 U.S.C. § 1329(a).

*In re Williams*, Case No. 23-10189-SDB, 2023 WL 5437543 (Bankr. S.D. Ga. Aug. 23, 2023).

[43] *In re Williams*, 2023 WL 5437543, at *2–3 (granting the Chapter 7 trustee's motion to set aside conversion of debtor's case to Chapter 13 because debtor acted in bad faith by failing to disclose: ownership of real property worth about $96,000; future inheritance from her father's estate, including $111,000 in life insurance as a result of her father's death two weeks before she filed her petition; ownership of two vehicles; and that the true balances in her bank accounts which were almost double what she reported on her schedules).

12

more than $259,000.00 . . . ."[44] That difference was not only significant, it was more than sufficient to provide a benefit to the debtor's creditors. Nothing in the instant case amounts to bad faith behavior remotely like that displayed by the debtor in *Williams*.

"Courts must consider the totality of the circumstances when determining whether a debtor has acted in bad faith."[45] As the Supreme Court stated in its iconic *Marrama* opinion: "[w]e have no occasion here to articulate with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical."[46]

An atypical case is one like *In re Brody*.[47] There, the bankruptcy court found a Chapter 13 debtor to be in bad faith for failing to disclose that both pre- and post-petition, "the Debtor received *hundreds of*

---

[44] *Id.* at *3. The court noted that the debtor's net monthly income also increased from a negative $159.00 to a positive $525.00, but that the reason for this increase was not clear. *Id.* at *2.

[45] *Id.* at *3; *see also In re Buis*, 337 B.R. 243, 250 (Bankr. N.D. Fla. 2006) (stating that good faith "must be determined on a case-by-case basis through a consideration of the totality of the circumstances.").

[46] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, at 37 n.11 (2007); *see also In re Piazza*, 719 F.3d 1253, 1263 (11th Cir. 2013) (explaining the totality-of-the-circumstances inquiry endorsed by *Marrama* looks for "atypical" conduct rising to the level of bad faith, or a lack of good faith); *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013) (holding that a court must review the totality-of-the-circumstances in determining whether a debtor acted in bad faith) (citing *In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995)).

[47] *In re Brody*, 671 B.R. 34 (Bankr. S.D.N.Y. 2025).

13

*thousands of dollars* in referral fee income."[48] Another atypical case is *In re Wolfson*.[49] The bankruptcy court in *Wolfson* held that the debtors had acted in bad faith by failing to disclose the sale of a North Carolina cabin for over $456,000 and a brokerage account, and by routing over $130,000 through two (2) bank accounts in others' names to pay off credit card and other debt just prior to filing.[50]

The Trustee's assertion that debtors are duty bound to accurately disclose their financial situation is correct. But the Trustee has not cited, nor has the Court located, a reported case in which a bankruptcy court granted a motion to dismiss a Chapter 13 case after all plan payments had been made, and where the only arguably inaccurate information pertained to gross income before deduction of retirement contributions.

## CONCLUSION

Under the totality of the circumstances, the Court does not find that Debtor acted in bad faith in this case. The undisputed facts show that Debtor properly calculated and reported her CMI when she filed this case, and again when her amended plan was confirmed in 2023. Debtor provided

---

[48] *Id.* at 36.
[49] *In re Wolfson*, Case No. 23-12564-PDR, 2023 WL 6970147 (Bankr. S.D. Fla. Oct. 20, 2023).
[50] *Id.* at *10.

copies of her income tax returns and her W-2s to the Trustee. Debtor did not fail to list, nor did she conceal, any assets. After Debtor modified her plan in 2023 to raise her plan payments, Debtor's income *decreased*, yet Debtor did not seek to reduce her plan payments.

For the reasons stated, it is

**ORDERED:**

1. The *Chapter 13 Trustee's Amended Motion to Dismiss* (ECF No. 120) is DENIED.

2. Upon this Order becoming final, the Clerk is authorized to issue Debtor's discharge.

**DONE AND ORDERED** on August 10, 2026.

_____
KAREN K. SPECIE
U.S. Bankruptcy Judge

The Chapter 13 Trustee is directed to serve a copy of this order on interested parties and file a certificate of service within 3 business days of entry of the order.

15